# CHARLESTON.

M. J. McMillan *et al.* v. C. L. McIntosh *et al.*

Submitted October 12, 1920. Decided October 19, 1920.

1. FRAUDULENT CONVEYANCES—*Parol Evidence of Spouses Ordinarily Insufficient to Show Good Faith in Husband's Conveyance as Against Creditors.*

Parol evidence of a husband and wife, relied upon for proof of an agreement between them, by which, if sustained, prop-

erty of the former is placed beyond the reach of his creditors, is ordinarily insufficient to establish it as against such creditors.    (p. 263).

2. Same—*Degree of Proof Necessary to Show That Conveyance Between Husband and Wife was Upon Consideration.*

Even though money or property of the wife is clearly shown to have passed into the hands of the husband, in consideration of which, he may have purchased property and caused it to be conveyed to her, or conveyed property of his own to her, it must be shown, in such case, with equal clearness by something more than their mere parol testimony, that the purchase was made with her money or in consideration of his indebtedness to her, or, in the other case, that the conveyance was made to her by him, in exchange for the money or property so received, or in consideration of his indebtedness to her.    (p. 264).

3. Same—*Gift from Wife to Husband Presumed Where Money or Property Passed from Her to Him.*

In all such cases, there is a presumption of a gift from the wife to the husband, which must be overcome by clear and satisfactory evidence.    (p. 264).

4. Same—*Circumstances Opposed to Claim that Husband's Conveyance to Wife was Supported by Consideration Enumerated.*

Lapse of a considerable period between the receipt of the money and the date of the purchase or conveyance, contradiction in the evidence as to the existence of the alleged agreement and unexplained failure to record the deed, until an action has been commenced for collection of a large debt, are circumstances inveighing strongly against the theory of a conveyance in consideration of indebtedness and requiring stronger proof thereof than is ordinarily requisite.    (p. 264).

(Williams, President, absent.)

Appeal from Circuit Court, Jackson County.

Suit by M. J. McMillan and others against C. L. McIntosh and others.    Decree for defendants, and plaintiffs appeal.

*Reversed and remanded.*

*Warren Miller,* and *M. C. Archer,* for appellants.

*S. P. Bell,* for appellees.

Poffenbarger, Judge:

The decree complained of dismissed on the merits, as to certain property, a bill filed to set aside a deed therefor, as having been made with intent to hinder, delay and defraud the plaintiffs and others as creditors of C. L. McIntosh.

The debt was originally a loan of $3,000.00 evidenced by a note dated, July 30, 1909, and secured by a deposit of certificates of shares of stock in the Bank of Ravenswood, of the par value of $4,000.00. The interest on the note was paid and the time of payment extended annually until July 30, 1914. A judgment for $3,031.00 was obtained on the note, Nov. 4, 1914, in an action of debt commenced Sept. 3, 1914.

While the action was pending and on Oct. 8, 1914, a deed from C. L. McIntosh to his wife, Virginia McIntosh, dated, July 22, 1911, and conveying to her the two lots in question, situated in the town of Ravenswood and known as Nos. 156 and 157, was recorded. Then this suit was instituted, July 1, 1915, to set aside that deed, on the ground stated above, and for other relief.

On May 15, 1915, the Bank of Ravenswood, in which the stock was held, was closed and went into liquidation, as an insolvent institution, and T. J. Sayre was appointed receiver for it. As such, he obtained two judgments against C. L. McIntosh, in August, 1915, one for $2,699.77 and the other for $289.04, and brought a suit in equity to enforce the liens thereof, which was consolidated with the suit brought by the McMillans, and both referred to a commissioner. Before the reference, however, Sayre assigned his judgments to F. F. McIntosh, brother of the debtor.

C. L. McIntosh had some real estate other than the two lots so conveyed to his wife. He owned Lots Nos. 127, 128 and 129 and an undivided half interest in two parcels of land containing together 16 acres and a fraction.

On the reference, several judgments were proved, including that of the McMillans, and no controversy as to their amounts or priorities has been brought here, except in so far as they are affected by the adjudication concerning the two lots conveyed to the wife. Both the Commissioner in his report and

the court in its decree upheld the deed and held the lots not liable for any of the husband's indebtedness. An exception to the commissioner's finding respecting them was overruled.

The defense to the assault made upon the deed is predicated upon an alleged purchase of the two lots by the wife. She, as the widow of Col. R. E. Fast, obtained title to $8,000.00 of life insurance money and some shares of stock in a California corporation known as the Crown City Investment Company. Out of the insurance money, she purchased some additional shares of the stock, making her holdings thereof 54 shares. In October, 1908, this stock was purchased by one D. M. Linnard, for the sum of $10,000.00, but, owing to his subsequent insolvency, only $2,300.00 of the purchase money was collected. This contract of sale was between C. L. McIntosh and Linnard. The former claims his wife assigned the shares to him in consideration of his agreement to convey to her the lots in question, at a valuation of $3,000.00, and his undivided interest in his father's homestead. On the $3,000.00, he claims to have credited the $2,300.00 collected from Linnard. In 1910, she loaned or furnished him $675.00 with which he bought an automobile. This sum he also credits on the $3,000.00 making payment in full for the two lots. The wife's testimony as to these matters agrees with his. But this agreement is unsustained by anything other than their oral testimony and the deed. She had some money and the stock and the latter went into the hands of her husband, but he may have taken it as her trustee or she may have given it to him. There is no written memorial of the transaction between them. This alleged trade was made, if at all, in 1908, and the deed was not executed until about three years later. They say execution of the deed was delayed for collection of the purchase money of the stock.

As between the husband and wife, on the one hand, and the husband's creditors on the other, such evidence is generally held insufficient. The verbal testimony must be supported by documentary evidence. *Bank* v. *Atkinson,* 32 W. Va. 203; *Wood* v. *Harmison,* 41 W. Va. 376, 392; *Horner* v. *Huffman,* 52

W. Va. 40, 52; *Edwards Mfg. Co.* v. *Carr,* 65 W. Va. 673 678; *Zinn* v. *Law,* 32 W. Va. 447.

Moreover, the facts and circumstances disclosed raise grave doubt and suspicion as to the character of this transaction. If the lots were to be conveyed in consideration of the assignment of the stock, the deed would likely have been made at the time. It bears a date between two and three years later and just eight days before the McMillan debt became due. Then it was withheld from the record for a period of more than three years, and recorded after the McMillans brought their action of debt. This circumstance unexplained is generally held to be a badge of fraud. 20 Cyc. 446, citing numerous authorities. It is unexplained here. They say recordation was merely neglected. The mother of C. L. McIntosh, and a brother, while he and his wife were in California, discovered it and had it recorded. No doubt the institution of the McMillan action was known to them and prompted the act. There is also contradiction as to the character of the assignment of the stock. The wife says it was transferred merely because she was the wife of C. L. McIntosh. Then she adds that the trade was made on the same day. To the contract between McIntosh and Linnard, for sale of the stock, there is appended a statement of a subscribing witness, saying "Mrs. McIntosh signed—to said D. M. Linnard with understanding that his contract be fulfilled, she to receive Ten Thousand Dollars for her interest in Crown City Investment Co. and for no other reason." This memorandum was apparently made at the time. C. L. McIntosh produced the contract. He no doubt held it from the date of its execution and delivery, and he does not deny that the endorsed memorandum was made contemporaneously with the execution of the paper. He says nothing about it. Though it was made by a stranger, it was accepted and preserved by the parties, and is, therefore, a part of the *res gestae.* It is documentary evidence and contradicts the whole theory of defense.

In view of these circumstances and the strictness of the rule as to proof in cases of this class, the decree will have to be reversed, in so far as it overrules the exception to the report of the Commissioner and sustains the deed in question and also in so

far as the adjudications therein conflict with any readjustment of liens or other provisions that may be necessary to make them conform to law and the rights of the parties, in view of the adjudication to be made here. The exception aforesaid will be sustained, the deed in question set aside and the cause remanded.

*Reversed and remanded.*